THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CYRIL GARGANO, Defendant-Appellant.

(No. 71-370;

Second District—April 6, 1973.

*Rehearing denied May 7, 1973.*

959

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, (Ben Ori, Assistant State's Attorney, and Edward Morris and James W. Jerz, of counsel,) for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant, Cyril Gargano, was convicted in the Circuit Court of Lake County of burglary and armed violence. He was sentenced to a term of 5-10 years for burglary and 5-12 years for the offense of armed violence, the sentences to run concurrently. The defendant appeals from

these verdicts and has raised numerous alleged grounds for reversal which we shall consider respectively.

The defendant, Cyril Gargano, Edward McCormick, and Paul Raymond were indicted for burglary, attempt to commit burglary, attempt to commit murder of a police officer, and armed violence. The defendants Gargano and McCormick were tried before a jury in a two week jury trial and the charge of attempt to commit burglary was dismissed by the court prior to the submission to the jury.

On October 3, 1970, Gargano and Paul Raymond were driven by McCormick to the residence of Beverly Jane Rundgren located in a wooded area on Lake Villa in Lake County, Illinois, where they were let out of the car on the road in front of the Rundgren residence. Prior to their arrival, two Lake County deputy sheriffs and four Chicago policemen had staked out the premises. The police officers were stationed behind trees and in the bushes on the Rundgren property. Gargano and Raymond approached the house by crouching behind trees and shrubbery up to the breezeway attached to the house. They went into the garage. A few minutes later they exited the garage and started down the driveway. Officer Cirone then identified himself, and called "Police, stop." The defendant Gargano ran and then turned and fired two shots at the police officer. Officer Cirone and Michaels fired at Gargano and Raymond, who had fled southwesterly. Raymond was physically captured by Deputy Donaldson assisted by Officers Michaels and Cirone. Cirone took a .22 caliber Derringer from Raymond's hand. Defendant Gargano almost ran into Officer Brown who hit him in the face with the butt of a shot gun. Gargano fell and Officer Grundy found a .38 detective Colt revolver on the ground. The two men were subdued and taken into custody. Shortly thereafter, the car driven by McCormick returned to the scene and detective Grundy put a flashlight on the driver and said "Police, stop." McCormick then drove away at a high rate of speed. Subsequently, he surrendered.

■■ The defendant has raised numerous issues. The first contention is that there was no proof that the defendant committed the offense of burglary, and that therefore the charge of armed violence cannot stand. The substance of defendant's contention is that the short period of time that the defendants were in the garage, the fact they had no burglar tools, and that no property was taken, is insufficient to establish at the time defendants entered the garage that they had the intent to steal required under the indictment. Actually, the defendant stealthily entered the garage attached to the home of Beverly Jane Rundgren armed with a .38 caliber revolver and wearing gloves. Mrs. Rundgren testified that the door between the garage and the house was locked. There was there-

fore actual entry into the premises and it is the function of the jury to weigh the credibility of the witnesses. The automobile in the garage was obviously a potential object of larceny and the jury were justified in finding that Gargano entered and the jury were justified in finding that Gargano entered the premises with intent to commit a theft. The fact that he may have been frightened away or found the inner door locked; the shortness of time he happened to be in the premises at this hour of the night having approached the premises stealthily by jumping from tree to tree does not indicate that he was a mere visitor, or as defense counsel would have us believe, a mere trespasser.

The indictment herein stated that the property in question was owned by Jane Rundgren. The proof disclosed that it was owned by Beverly Jane Rundgren. Defendant contends this is a fatal variance.

■■ Counsel has cited *People v. Walker* (1955), 7 Ill.2d 158 at 161, 130 N.E.2d 182 at 183, as authority for this contention. However, counsel failed to cite the next sentence which reads as follows: "Proof of the Christian name is unnecessary, however where the facts in evidence leave no doubt as to the identity of the person."

■■ Likewise, defendant's contention that a garage attached to a house is not a part of the residence, is specious as the Burglary statute species "or any part thereof." Ill. Rev. Stat. 1969, ch. 38, sec. 19(1); *People v. Blair* (1952), 52 Ill.2d 371, 288 N.E.2d 443.

■■ The defendant next contends that he should have been allowed to take a polygraph or lie detector test and to permit the results of said test into evidence. The admissibility of polygraph tests in Illinois has been the subject of numerous cases. The most important one doubtless is *People v. Zazzetta* (1963), 27 Ill.2d 302, 189 N.E.2d 260, 263. In that case the court stated at page 306:

> "In the absence of stipulation, our courts, without exception, reject the results of lie-detector tests when the same are offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime."

We do not agree with defendant's contention that the results of a lie detector test are admissible in evidence. The Illinois Supreme Court and this court have never held that the results of lie detector tests used against the accused are admissible, and in this court's opinion the converse is likewise true. If the test is unreliable as to the guilt of the accused it is equally as unreliable as to the innocence of the accused.

■■ Defendant alleges "prosecutorial misconduct." The substance of the alleged improper conduct of the prosecutor consists of a question by him of a fire-arms expert with reference to a report made by the expert "Does that report cover not only what was done?" There was an objection

and no further inquiry was had. Secondly, he complains of the State's Attorney's closing argument that the Lake County Sheriff's department contacted City of Chicago police authorities, where actually it was the reverse. This court fails to see how either of these contentions would affect the jury adversely in any way, nor would these contentions have anything to do with the guilt or innocence of the accused.

■■ The same is true with regard to defendant's contention that he should have been allowed to bring in the hospital records pertaining to the injuries sustained by him after the shooting and other statements therein. Ill. Rev. Stat. 1969, ch. 38, sec. 115—5 provides in pertinent part that hospital records are not admissible in a criminal trial, and Plaintiff's exhibit No. 15 pertaining to medical and hospital records of defendant was not admissible.

■■ Counsel complains his right of cross examination was restricted and that he was not permitted to present his theory of the case to the jury. Examination of the record discloses that the court ruled correctly in limiting defendant's cross examination on extraneous matters. An example is a question by defense counsel of one of the arresting officers Hughes as to whether or not he knew a James Dennis. As the State points out the acquaintance of the defendant with James Dennis would have absolutely nothing to do with his guilt or innocence of the instant crimes. Similarly, whether there was or was not a no trespass sign on the premises, likewise, had no bearing on the guilt or innocence of the defendants in being on the premises in the fashion previously described herein. Defendant's theory is that defendant and Raymond were lured to the burglary site by the police who intended to "assassinate" them. No evidence whatsoever was produced that would substantiate this charge nor was any evidence produced in trial pertaining to this. It would appear that the basis of this argument is that the two defendants were entrapped. To raise the issue of entrapment we encounter the familiar principle that in order to do so, defendant must admit that there was a crime committed and that he was entrapped into committing it. (*People v. Fleming* (1971), 50 Ill.2d 141, 277 N.E.2d 872.) Examination of the record discloses that counsel did argue at length his theory of the case. It would appear that only when he went outside the record was objection sustained to his closing argument.

■■ We have examined the defendant's instructions which the trial court refused to give. We find that the trial court was correct in so refusing these instructions and a tendered verdict form, *viz.*—an instruction on circumstantial evidence (IPI 3.02 covered this issue and was given); an instruction on entrapment; an instruction on disorderly conduct; and verdict forms of guilty and not guilty of disorderly conduct.

 The defendants were tried for three separate felonies. The trial court submitted three different forms of guilty for each offense and one not guilty form. Contrary to defendant's contention this is the approved practice in a multiple charge case. The trial court was correct in submitting three forms of guilty verdict to cover each offense and one form of not guilty verdict. (See IPI Pattern Jury Instructions Criminal, page 473). The subsequent submission of three separate not guilty forms of verdict by the court to the jury was surplusage and was in no way prejudicial to the defendant.

 The jury deliberated from 5:00 P.M. until midnight when they retired for the night. The next day they deliberated from 11:00 A.M. until 6:30 P.M., when the Judge asked the jury if they could reach a verdict. Several other inquiries of the jury took place, including the giving of the aforementioned not guilty verdict forms and finally about 9:00 o'clock in the evening the jury brought in the two verdicts of guilty. It has repeatedly been held that it is within the sound discretion of the trial judge as to the length of time a jury may deliberate. The case before us took two weeks to try, involved two defendants, and included three felony charges. Examination of the conversations between the Judge, the Jury, and the Jury foreman show no prejudicial statement made by the court, and show no coercion whatsoever on the part of the court. While the actual time the jury deliberated was about 29-30 hours we do not find that the court abused its discretion in allowing the jury to deliberate that length of time in this case.

The defendant was sentenced to 5-12 years for armed violence (Ill. Rev. Stat. 1969, ch. 38, sec. 33A—2 and 33 A—3) and to a term of 5-10 years for burglary. Ill. Rev. Stat. 1969, ch. 38, sec. 19—1.

The new Unified Code of Corrections is applicable to the sentences herein. (Ill. Rev. Stat. 1972, ch. 38, sec. 1003—1—2 *et seq.* effective January 1, 1973.) Sec. 1008—2—4 provides as follows:

> "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced."

 We have previously held that "final adjudication" includes pending appeals before this court. *People v. McCloskey* (1971), 2 Ill.App.3d 892 at 900, 270 N.E.2d 126, and *People v. Chupich,* 53 Ill.2d 572.

Ill. Rev. Stat. ch. 38, sec. 33—A—3 as amended, effective January 1st, 1973, provides that:

> "Violation of Section 33—A—2 is a class 4 felony or the maximum

sentence provided for the same act while unarmed, *whichever is greater.*" (Emphasis supplied.)

Ill. Rev. Stat. 1971, ch. 38, sec. 33—A—2 provides that a person commits armed violence when, while armed with a dangerous weapon, he commits the act of burglary.

Ill. Rev. Stat. 1972, ch. 38, sec. 19—1 as amended, effective January 1st, 1973, provides that burglary is a Class 2 felony carrying with it a possible term of imprisonment of 1 to 20 years. The limitations on the penalty imposed for armed violence are therefore greater than a Class 4 felony in the case of the offense of armed violence committed in the act of burglary.

The sentence imposed herein for burglary was 5-10 years. The Unified Code of Corrections is applicable and in conformity with sec. 1005—8—1 (C) (3) this for a Class 2 felony must be reduced to a minimum of 3 years and 4 months and the maximum of 10 years. The sentence imposed for armed violence being governed by the Burglary Statute, in our opinion the maximum of 12 years imposed on the armed violence charge is within the limits of the possible 20 year maximum sentence under the 1973 statute for burglary. However, to be consistent we will likewise reduce the sentence of 5-12 years imposed for armed violence to a minimum sentence of 3 years and 4 months, and a maximum of 10 years, in conformity with the applicable provisions of the Unified Code of Corrections. Under the authority of Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110—A, sec. 615), the sentences are so modified.

Convictions affirmed. Sentences modified.

SEIDENFELD and ABRAHAMSON, JJ., concur.