THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM BARKER, Defendant-Appellant.

(No. 72-94;

Second District—July 17, 1973.

Paul Bradley and Richard Wilson, both of Defender Project, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, James W. Jerz, of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant, William Barker, was indicted by a grand jury of Lake County on May 4, 1971, and charged with the offense of robbery in that he took a wallet and approximately $20 in cash from Lloyd LaFond by the use of force. The matter proceeded to trial in July of 1971 but resulted in a mistrial when the jury failed to return a verdict. A second trial took place in November of 1971 at which time a jury found Barker guilty as charged and he was sentenced to a term of from 2 to 4 years in the penitentiary. On appeal the defendant contends that he was not proved guilty beyond a reasonable doubt and that the trial court improperly refused to give his offered instructions on the weight to be afforded accomplice testimony.

Lloyd LaFond testified that about midnight on March 13, 1971, he left Lee's Tap in Lake County where he had stopped for a beer. As he walked from the tavern, LaFond was hailed by the defendant from his car which was parked near the front of Lee's. After a short conversation, Barker invited LaFond to get in the car and have a beer. LaFond got in the front seat from the right hand side and joined Barker and a "young fellow" seated between them. They discussed construction work for a few minutes and then Barker left saying he had to go to the washroom. LaFond continued to talk with the other occupant of the car until he was suddenly seized around the neck through the open car window and pulled out of the car and thrown on the ground. His assailant kicked him in the ribs, took his wallet, got into the car and drove off. LaFond saw only the pants of his assailant which, he testified, were green with a dark stripe. LaFond went home and was contacted shortly thereafter by the Zion police who asked if he had lost his wallet. LaFond went to

the station where he identified Barker from his green pants with a dark stripe.

Michael Tobias testified for the state that he was 16 years old and was hitchhiking at approximately 6:30 P.M. on March 12 when he was picked up by Barker with whom he was not previously acquainted. Tobias contributed $2 towards the purchase of a case of beer after he agreed to Barker's suggestion that they obtain something to drink. Barker then drove to a hospital to visit his wife where Tobias waited in the car for approximately one hour and drank about 5 bottles of the beer. After leaving the hospital, the two drove around Waukegan for another hour and stopped at a bowling alley in Zion to "* * * see if we could get any money from anybody that we knew." They left the bowling alley when they did not find anyone, drove around a skating rink and stopped at Al's Tap, located 50 feet from Lee's Tap. They played the pinball machine at Al's where Barker had a beer but where Tobias was refused service because of lack of proper identification. They returned to the car about 12:30 A.M. and drove the 50 feet to Lee's Tap where Barker purchased a cold six-pack of beer since he had discarded the warm beer left in the original case. Barker returned with the beer to the car where he and Tobias sat and talked and drank the beer. Tobias testified further that LaFond then came out of Lee's and came over to the car at the request of Barker. The two discussed construction work in the area and Barker invited LaFond to join them in the car for a can of beer. LaFond got in the front seat next to Tobias and they continued to discuss the job situation for a few minutes before Barker left the car to go to the washroom. Tobias and LaFond then conversed together until Tobias next saw Barker reach through the open window on the right side of the car and grab LaFond by the neck and drag him from the car. Barker told Tobias to take LaFond's wallet but he did nothing since he was, in his words, "too scared". Barker took the wallet, hit LaFond, who was on the ground, threw the wallet into the car, got in and drove off. They drove around for another 45 minutes and were ultimately stopped by the police.

Deputy Sheriff Perry Coleman testified for the defendant that he telephoned LaFond from the Zion police station on March 13, 1971, and asked him if he was missing a wallet. Coleman stated that he believed LaFond informed him that two subjects had taken his wallet at a parking lot of Al's Tap. Coleman recalled that LaFond said that there were two subjects but that he was knocked to the ground and kicked by one of the subjects who wore blue and white striped pants. On cross examination Coleman testified that LaFond identified Barker at the police station as the man who was responsible for his injuries and took his

wallet and that Tobias had nothing to do with it but was just an on-looker. He also said that Barker was wearing blue pants with white stripes.

Police officer Norman Lee also testified for the defense that he spoke to LaFond by telephone on March 13. Lee stated that LaFond told him that he was robbed by a large subject as he left Frenchie's Tavern and that a small subject was also there but did not have contact with him. Lee also recalled that LaFond told him that the larger subject wore light colored pants.

The following instruction (being I.P.I. instruction 3.17) was offered by the defense and refused by the trial court:

"An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

■■ An accomplice has been described as one who knowingly, voluntarily and with a common interest with others participates in the commission of a crime. (*People v. Coddington*, 123 Ill.App.2d 351, 259 N.E.2d 382, 392.) The generally accepted test as to whether a witness is an accomplice is whether he could have been charged for the offense either as a principal or accessory. *People v. Nowak*, 45 Ill.2d 158, 258 N.E.2d 313, 318; *People v. Hrdlicka*, 344 Ill. 211, 222, 176 N.E. 308.

■■ The trial court commented that it was certain that there was no accomplice involved in this case when the tendered instruction was refused. The record before us strongly supports that conclusion.

The defendant argues that the testimony of Tobias himself implies his participation in the crime. He points out that Tobias testified that he and Barker had, earlier in the evening, gone to a bowling alley to see if they could get money and that LaFond had first informed the two police officers that he was attacked by two persons. However, even a cursory examination of the record shows that his interpretation of this testimony is actually a distortion of it. Tobias testified that he and Barker went to the bowling lanes "* * * to see if we could get any money from anybody that we knew." At the earlier trial, he had testified that they went to borrow money from friends. Surely his testimony was consistent on this point that he and Barker intended to borrow money from their acquaintances since a plot to rob an acquaintance would obviously be an absurdity. In addition, the testimony of the police officers was not that LaFond informed them that he was attacked by two persons but that two persons were present and that only one of them, identified as Barker, assaulted him and took his wallet. LaFond testified at the

trial that Tobias remained in the car during the time he was dragged from it and robbed. Under the circumstances, the testimony of the 16 year old Tobias that he was too frightened to interfere is certainly capable of belief. We agree that there was no evidence that Tobias was an accomplice to the crime and that the accomplice instruction was properly refused.

■■ The defendant also contends that the testimony of LaFond and Tobias (being the only 2 witnesses produced by the state) was insufficient to sustain his conviction. He points out that LaFond was able to identify his assailant only by the color of his pants and that his description of the pants was so confused and contradictory as to render that identification worthless. It was, of course, the function of the jury to consider any inconsistencies in the testimony of the witnesses and to generally assess their credibility. A court of review will not reverse a judgment of conviction unless there is a well founded and reasonable doubt of the guilt of the accused and the verdict is found to be palpably contrary to the weight of the evidence. (*People v. Robinson,* 14 Ill.2d 325, 153 N.E.2d 65.) The jury here not only had the testimony of La-Fond to consider but the positive and unequivocal identification of Barker by Michael Tobias. The law is clear that the testimony of one credible witness is sufficient to sustain a conviction. (*People v. Novotny,* 41 Ill.2d 401, 244 N.E.2d 182, 188.) In our opinion the evidence before the jury was sufficient to support their verdict and sustain the conviction of the defendant.

■■ The defendant has also filed a motion for summary modification of sentence under the provisions of the new Unified Code of Corrections. (Ill. Rev. Stat. 1972, ch. 38, sec. 1001—1—1 *et seq.,* effective Jan. 1, 1973.) Section 1008—2—4 of the Code provides that if the matter has not reached a "final adjudication" then the sentences under the Code are to be applied if they are less than under the prior law. It has been held that if there is a pending appeal the cause has not reached a "final adjudication" as defined in the Code. *People v. McCloskey,* 2 Ill.App.3d 892, 274 N.E.2d 358; *People v. Keating,* 2 Ill.App.3d 884, 274 N.E. 2d 362; *People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1.

■■ The penalty for robbery at the time that this prosecution was commenced was, and still is, a term of from 1 to 20 years in the penitentiary. (Ill. Rev. Stat. 1971, ch. 38, sec. 18—1(b).) The sentence for robbery under the Unified Code of Corrections also is a penitentiary term of from 1 to 20 years (as a class 2 felony) but the minimum term, in any event, may not exceed one-third of the maximum term actually imposed. (Ill. Rev. Stat. 1972, ch. 38, sec. 1005—8—1(c) and (3).) Although the sentence under the Code is not less than the possible sen-

tence under the prior law, the minimum sentence actually imposed was greater than that provided by the procedural rules of the Code. Sentences have been modified under similar circumstances. *People v. Harvey*, 53 Ill.2d 585, 590, 294 N.E.2d 269, 272; *People v. Gargano*, 10 Ill.App.3d 957, 295 N.E.2d 342.

We therefore conclude that the sentence must be modified so that the minimum does not exceed one-third of the maximum or to a term of 1 year and 4 months to 4 years and the sentence is so modified.

Judgment of conviction affirmed, sentence modified.

GUILD, P. J., and T. MORAN, J., concur.