THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL DRYSDALE, Defendant-Appellant.

Fifth District   No. 76-218

Opinion filed July 15, 1977.

668

Ralph Ruebner and Allen L. Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

Terrence J. Hopkins, State's Attorney, of Benton (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Daniel Drysdale, was charged in the circuit court of Franklin County with the offenses of burglary and theft (over $150). Following a jury trial, he was found innocent of burglary and guilty as charged of theft. Defendant appeals the judgment entered by the trial court and he presents two questions for review: (1) whether the court erred in refusing a tendered accomplice testimony instruction; and (2) whether defendant was denied the effective assistance of counsel where the attorney had formerly represented a State's witness.

At trial the State's evidence showed that on October 25, 1975, it was discovered that glass had been removed from a window at a lumber company and that various power tools and like items were missing from a display rack. On the following day, Police Officer James Pritchard had a conversation with Carl Overton during which Pritchard asked Overton if he had any information about the break-in. Overton stated that he had no information on the matter but that he would contact Pritchard if he learned of anything. Thereafter, on the evening of October 29, 1975, while Overton was walking in front of defendant's home, defendant called to him and asked him if he would want a power drill. Defendant told Overton that he had some power tools hidden up the road. Overton testified that he pretended interest in the offer in order to be of assistance to the police. Defendant led Overton to a field where various items were hidden. These were later identified at trial as those taken from the lumber company. Eventually, the items were brought to Overton's garage in order to protect them from the weather and so that Overton could attempt to sell them for defendant. At approximately 3 a.m. defendant departed and around 4:30 a.m. Overton called Officer Pritchard. Overton testified that he waited before making the call until defendant, who lived less than a block away, would have been asleep. Subsequently, Overton showed the police the items in his garage and the field where they had been originally hidden.

Defendant presented no evidence.

Since we find the issue to be dispositive of this appeal, we first turn to defendant's second contention that reversal here is required as a result of his trial counsel's conflict of interest.

At trial defendant was represented by privately retained counsel, Paul Caldwell. During Caldwell's cross-examination of Overton it was revealed that three years previously Caldwell had been appointed to represent Overton in an involuntary commitment proceeding. Evidence was also introduced consisting of a petition for emergency hospitalization, dated January 16, 1973, which alleged that Overton was in need of mental treatment; an order, dated January 19, 1973, finding Overton in need of mental treatment and directing his immediate

hospitalization; a motion by Caldwell, dated January 19, 1973, for attorney's fees in connection with his representation of Overton at the involuntary commitment proceeding; and lastly, a notice showing Overton's absolute discharge on March 22, 1974.

Defendant contends for the first time in this appeal that Caldwell's commitments stemming from his past representation of Overton and his present representation of defendant constitutes a *per se* conflict of interest since the general subject matter of Overton's involuntary commitment was proper evidence with which Overton could be impeached and hence Caldwell's ability to effectively cross-examine Overton was limited. The State responds, in effect, by arguing that the record does not demonstrate any actual conflict of interest nor, in any event, is any resulting prejudice shown thereby.

■ At issue is whether defendant was denied the effective assistance of counsel due to a *per se* conflict of interest. The fundamental right to the effective assistance of counsel requires that the person represented shall receive the undivided loyalty of counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) As the court stated in *Porter v. United States* (5th Cir. 1962), 298 F.2d 461, 463:

> "The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others."

An analysis of the cases in Illinois leads us to conclude that a *per se* conflict of interest will be found whenever there is a showing that a defense counsel's past or present commitment to others raises the possibility of an unwillingness or inability to effectively represent a defendant and in such a situation a reversal will be warranted even without a showing of any actual prejudice resulting thereby.

In *People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441, the defendant was convicted of the burglary and theft of a jewelry store. The store and its owner were clients of the law firm of the court appointed defense counsel. Moreover, the defense attorney, himself, had previously represented the store and its owner in unrelated matters. On appeal, the defendant contended that he was denied effective representation. The court in reversing the judgment stated:

> "There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an

accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice." 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.

In *Stoval* the "commitment to others" primarily consisted of the law firm's representation of the store and its owner in unrelated matters. This commitment raised a potential conflict of interest since, the court felt, the attorney might hesitate to jeopardize the good graces and future legal business of his firm's client who was the victim of the crime by a vigorous defense of the defendant. Hence, even though actual prejudice was not shown, the mere possibility of an unwillingness to effectively represent the defendant was held sufficient to require the granting of a new trial. See also *People v. Meyers*, 46 Ill. 2d 149, 263 N.E.2d 81.

In *People v. Kester*, 66 Ill. 2d 162, 361 N.E.2d 569, the defendant's court appointed attorney had made three court appearances on behalf of the State in the same proceedings in which he later assumed the duties of defense counsel. The court, while noting that there appeared to be no continuing commitments between the attorney and the State and thus there was no concurrent representation of two clients with conflicting interests, nonetheless found that the past commitment was such as to raise a potential conflict of interest. The conflict arose from the possible unwillingness or possible "subliminal reluctance" of the attorney to attack any of the actions or decisions he might have been previously involved with on behalf of the prosecution. Moreover, the court found it neither "necessary or desirable" to inquire into the precise nature and extent of the attorney's prior personal involvement in the case for the prosecution. That there had been a prior involvement was *per se* a conflict of interest requiring reversal although no prejudice was shown. See also *People v. Wyatt*, 47 Ill. App. 3d 582, 362 N.E.2d 122 (the court following *Kester* held a single appearance by the attorney on behalf of the State was *per se* a conflict of interest without regard to the nature of the involvement).

■■ While in *Stoval* and *Kester* the conflict arose where there was found to exist a potential unwillingness to effectively represent the defendant, such a conflict may also arise from a potential inability to effectively represent the defendant due to the attorney's commitment to others. Once an attorney has been retained by a client he cannot serve an interest adverse to that client regarding the same general subject matter of that employment even after the termination of his services. (*People v.*

*Gerold,* 265 Ill. 448, 107 N.E. 165.) Thus where the same attorney represents a defendant and a co-defendant whose interests are "antagonistic" reversal is warranted. (*People v. Ware,* 39 Ill. 2d 66, 233 N.E.2d 421; see also *People v. Coslet,* 67 Ill. 2d 127, 364 N.E.2d 67, where the same attorney represented the defendant charged with the murder of her husband and the administrator of her husband's estate.) In such a situation, even where the attorney's services to the co-defendant have been terminated but where the co-defendant testifies against the defendant, there exists the potential of an inability to effectively cross-examine the co-defendant due to the continuing commitment of the attorney not to disclose any confidence given him by his former client. *People v. Halluin,* 36 Ill. App. 3d 556, 344 N.E.2d 579; *People v. Johnson,* 46 Ill. 2d 266, 265 N.E.2d 869.

■■ In the case at bar, the defense attorney, Caldwell, represented Overton in a prior involuntary commitment proceeding resulting in an adjudication that Overton was in need of mental treatment. The general subject matter of this previous employment was a proper subject for cross-examination and impeachment in the instant case. (*People v. Dixon,* 81 Ill. App. 2d 330, 225 N.E.2d 445.) Caldwell, however, was subject to a continuing commitment not to disclose any confidence given him by his former client. As such, there existed a *per se* conflict of interest denying defendant effective representation arising from the *possible* inability of Caldwell to effectively cross-examine Overton. Although no prejudice is shown in the record by the potential conflict of interest, as pointed out by the State, we believe that if an exception is to be carved out of the above cited cases and the rule embraced therein, such exception is not to be made by this Court. We also note that while defendant was aware of his attorney's prior representation of Overton, the record does not show that defendant was in any manner admonished as to the significance of the potential conflict. Thus he cannot be held to have waived his right to assert this issue on appeal. (*People v. Kester,* 66 Ill. 2d 162, 361 N.E.2d 569.) Accordingly, we reverse defendant's conviction and remand for a new trial.

Since we believe the issue may again arise on retrial, we next will address defendant's first contention.

■■ At trial, defendant tendered Illinois Pattern Jury Instruction, Criminal, No. 3.17, which was refused by the trial court. It states:

"An accomplice witness is one who testified that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

On appeal defendant contends that the court erred in refusing the instruction. In *People v. Riggs*, 48 Ill. App. 3d 702, 363 N.E.2d 137 we stated:

> "The instruction is properly given when the accomplice testifies on behalf of the State implicating a defendant. (*People v. Howard*, 130 Ill. App. 2d 496, 263 N.E.2d 633.) In such a situation, the purpose of an admonishment of caution is apparent. Due to the relationship of the witness and the State, there may be a strong motivation to testify falsely for the accomplice who seeks, hopes or expects lenient treatment by the State in return for favorable testimony."

The instruction, however, is properly refused when there is no evidence that the witness is an accomplice in the crime. (*People v. Barker*, 13 Ill. App. 3d 349, 299 N.E.2d 365; *People v. Hunt*, 132 Ill. App. 2d 314, 270 N.E.2d 243.) An accomplice has been defined as one who could himself have been indicted for the offense as either a principal or accessory. (*People v. Nowak*, 45 Ill. 2d 158, 258 N.E.2d 313.) IPI Criminal No. 3.17, states that an accomplice witness "is one who testifies that he was involved in the commission of a crime with the defendant."

In the case at bar, defendant argues that Overton's possession of the stolen property at the time the police recovered the property gave rise to an inference that Overton was involved in the theft because, he asserts, the possession thereof was recent, exclusive and unexplained. The argument is specious.

■■ Overton's possession of the stolen property was fully explained and the explanation was corroborated and uncontradicted. Overton testified that he had associated himself with defendant and had acted as a pretended confederate in order to obtain evidence and to prevent defendant from effecting his criminal purposes. This assertion was strongly corroborated by the evidence that he had informed the police within a reasonable time, under the circumstances, after obtaining the evidence used to prosecute defendant. In fact, the police recovered the stolen property only because of his phone call. Moreover, his description of his activities on the evening in question was corroborated by evidence that an investigation on the next morning of the field where the stolen property had originally been hidden showed marks and indentations in the weeds and footprints on the muddy ground all of which were consistent with Overton's testimony. While normally an accomplice acknowledges himself to have been involved in the crime, Overton made no such acknowledgment and he denied in effect any complicity in the theft. Defendant contends that it was for the jury to accept or reject Overton's explanation of his possession of the stolen property. However,

the record shows that the explanation was uncontradicted. Since there was no evidence that Overton was an accomplice, the court properly refused the admonishment of caution.

The judgment of the circuit court of Franklin County is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

CARTER, P. J., and G. MORAN, J., concur.