THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDWARD G. CUNNINGHAM, Defendant-Appellant.

Third District   No. 3—83—0808

Opinion filed August 10, 1984.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Joan C. Scott, State's Attorney, of Lewistown (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant-appellant, Edward G. Cunningham, was convicted of two counts of aggravated indecent liberties with a child and one.

count of indecent liberties with a child after a stipulated bench trial in Fulton County. The trial court imposed a sentence of 12 years' imprisonment for each of the two counts of aggravated indecent liberties and a sentence of 4 years for the one count of indecent liberties. All three sentences were made concurrent.

On appeal, the defendant contends that he was denied his constitutional right to effective assistance of counsel throughout the trial court proceedings because his public defenders labored under a conflict of interest. The public defenders had represented two potential adverse witnesses, who pleaded guilty to charges of sexual assault involving the same complainant as in two of the counts against the defendant.

The pertinent facts in this case are as follows. On April 12, 1983, the defendant sought counseling with Dr. Harold Iwashita, a registered psychologist. The defendant revealed that he had been having sexual contact with some children. Iwashita reported defendant's conduct to the Department of Children and Family Services, which in turn contacted the Fulton County State's Attorney. Sergeant Daly of the Fulton County sheriff's office then conducted interviews with the defendant, his stepson, Gordon Griffith, and his three step-grandsons, David Griffith, Richard Roberts, and Joseph Roberts.

The interviews revealed frequent sexual contact among the members of the family. The defendant admitted to sexual contact with his three step-grandsons and with his stepson. The defendant was then charged by information with the above offenses. On April 14, 1983, Gordon Griffith and Richard Roberts were charged with taking indecent liberties with David Griffith. The trial court appointed Fulton County public defender Thomas Ramsey to represent all three men. On April 25, 1983, each entered a plea of not guilty, and they continued to be represented by the public defender.

On July 13, 1983, Richard Roberts, represented by public defender Ramsey, entered a negotiated plea of guilty to two counts of indecent liberties with a child. He received a sentence of 30 months' probation, on condition that he spend 120 days in jail and seek mental health treatment. On July 15, 1983, public defender Ramsey filed a motion to suppress the defendant's statements to the Fulton County authorities. The motion alleged that the statements were obtained only through a breach of a psychologist-patient privilege that existed between Dr. Iwashita and the defendant. On August 1, 1983, Gordon Griffith, represented by assistant public defender, John Clark, also entered a negotiated plea of guilty to one count of indecent liberties. Griffith received the same sentence as Roberts.

On September 13, 1983, a hearing was held on the defendant's motion to suppress. After testimony was heard Ramsey informed the court that a possible conflict of interest existed because Richard Roberts and Gordon Griffith were potential witnesses for the State. Ramsey asked leave to withdraw as the defendant's counsel if the motion to suppress was denied. The trial court later denied the motion. However, Ramsey did not subsequently file a written motion to withdraw.

On October 24, 1983, a stipulated bench trial was held at which the defendant was represented by attorney Clark. The defense stipulated to what Joseph Roberts, David Griffith, and Sergeant Daly would testify to if they were called as witnesses. The defense presented no evidence and the trial court convicted the defendant on all three counts. The trial court conducted a sentencing hearing on December 7, 1983. Sergeant Daly testified in aggravation as to the defendant's statements on April 13, 1983, and the court took judicial notice of the files of Gordon Griffith and Richard Roberts. The court then imposed sentence.

The sole issue on appeal is whether the defendant was denied effective assistance of counsel due to a *per se* conflict of interest.

In criminal proceedings, a defendant is guaranteed the right to assistance of counsel by the constitutions of both the United States and the State of Illinois. (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. 1, sec. 8.) The right to effective assistance of counsel requires that a defendant's attorney "not represent conflicting interests or undertake the discharge of inconsistent duties." (*People v. Kester* (1977), 66 Ill. 2d 162, 166, 361 N.E.2d 569, 571.) Once an attorney has received the confidence of a client, he cannot serve an interest adverse to that client regarding the same general subject matter of his representation, even after the termination of his services. (*People v. Coslet* (1977), 67 Ill. 2d 127, 132, 364 N.E.2d 67, 69-70; *People v. Gerold* (1914), 265 Ill. 448, 477, 107 N.E. 165, 177.) Thus, the Illinois Supreme Court has adopted a *per se* conflict of interest rule whereby a defendant need not allege or prove prejudice "in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others, with even closer scrutiny being applied where counsel is appointed for defendant." *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70.

The defendant contends that he was denied effective assistance of counsel because Ramsey and Clark labored under a *per se* conflict of interest when they represented the defendant while at the same time

representing Richard Roberts and Gordon Griffith, respectively. In support of this contention the defendant maintains that Gordon Griffith and Richard Roberts were potential witnesses against him because they were charged with sexual misconduct toward David Griffith, who was also the complainant for two charges against the defendant. The defendant further maintains that even though Griffith and Roberts had been convicted and sentenced, the attorneys' obligation to Griffith and Roberts continued as to the subject matter of the representation and that the confidential relationship between his attorneys and the two potential State witnesses could have affected their representation of him. He also points out that evidence of his activities with Griffith and Roberts was presented in aggravation at sentencing.

In response, the State contends that no *per se* conflict of interest existed because the public defender's office terminated its representation of Gordon Griffith and Richard Roberts before the defendant's stipulated bench trial. Therefore, according to the State, the defendant had the burden of showing actual conflict at trial and resulting prejudice, and since he failed to do so, his convictions should be affirmed.

■ Initially we note that the defendant has not waived the conflict of interest issue. It is true that the defendant, Gordon Griffith, and Richard Roberts all appeared before the trial court on April 25, 1983, for arraignment. All three were represented by attorney Ramsey and all three pleaded not guilty. Thus, the defendant was aware of his attorney's representation of Griffith and Roberts. However, a strong showing of an intentional and knowing waiver of a conflict of interests issue is required for there to be a waiver. (*People v. Mathes* (1979), 69 Ill. App. 3d 275, 281, 387 N.E.2d 39, 43.) Here, there is no indication in the record that the defendant was ever advised of either an existing or potential conflict of interest.

We now consider several cases cited by the defendant that we find persuasive. In *People v. Johnson* (1970), 46 Ill. 2d 266, 265 N.E.2d 869, the defendant was jointly indicted with Westley and Lewis. The public defender was appointed to represent all three defendants. Prior to the defendant's trial, the indictment against Lewis was dismissed and he was granted immunity. In addition, Westley withdrew his plea of not guilty and entered a plea of guilty. Lewis testified for the State at the defendant's trial. On appeal, the Illinois Supreme Court rejected the State's argument that the dismissal of the indictment against Lewis terminated the attorney-client relationship between Lewis and the public defender and that therefore no conflict of inter-

est existed. Thus, even though it was technically true that the attorney-client privilege was severed, the court refused to put form above substance and reversed the defendant's conviction.

In *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 366 N.E.2d 394, the defendant was charged with the offenses of burglary and theft. Called as a witness on behalf of the State at the defendant's trial was a man whom the defendant's attorney had represented at a prior involuntary commitment proceeding which resulted in an adjudication that the individual was in need of mental treatment. A *per se* conflict of interest was found to exist because of the possible inability of defendant's attorney to effectively cross-examine the State's witness. The court held that a *per se* conflict is found where "defense counsel's past or present commitment to others raises the possibility of an unwillingness or inability to effectively represent a defendant and in such a situation a reversal will be warranted even without a showing of any actual prejudice resulting thereby." *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 670, 366 N.E.2d 394, 396.

In *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402, the defendant was charged with the offense of criminal damage to property. His attorney's law firm was retained by a hospital which was the defendant's victim in an unrelated case then pending against the defendant. At the defendant's sentencing hearing on the criminal damage to property case, the State presented in aggravation the testimony of an administrator from the hospital. The administrator's testimony related to the misdemeanor previously committed by the defendant against the hospital. We found that a *per se* conflict of interest existed and thus there was no need for the defendant to show actual prejudice, even though counsel did not represent the defendant and the hospital with regard to the same offense.

The reasons for finding a conflict of interest in the present case are more compelling than in the cases cited above. In *Johnson*, the Illinois Supreme Court found that a conflict of interest existed even though the indictment against the State's witness was dismissed and he was granted immunity prior to testifying against the defendant. Here, while both Griffith and Roberts had been sentenced prior to the defendant's stipulated bench trial, they were both subject to ongoing sentences of probation. In *Arreguin,* a *per se* conflict of interest existed even though defense counsel had represented the State's witness in a totally unrelated cause. Here, even though the defendant, Griffith, and Roberts were not codefendants, the charges against all three were interrelated. All three were charged with sexual misconduct involving David Griffith. Thus, the possibility that information gained

from the two potential State witnesses could have affected the public defenders' representation of the defendant was greater than in *Arreguin.*

It is true that in *Johnson, Drysdale,* and *Arreguin* the State witnesses actually testified against the defendants either at trial or during sentencing. However, we find that this distinction is not crucial. In the present case a potential conflict of interest arose when Ramsey and Clark represented Roberts and Griffith while at the same time representing the defendant. Since Griffith and Roberts were possible State witnesses, both attorneys were subject to conflicting interests. This potential conflict of interest may have affected Ramsey's decision to rely totally on the motion to suppress instead of also pursuing a psychological defense. It may also have affected counsels' decision to proceed to a stipulated bench trial, which allowed them to avoid having to cross-examine Griffith and Roberts.

■ We find that a *per se* conflict of interest existed and that the defendant's convictions must be reversed. While there has been no showing that either Ramsey or Clark failed to represent the defendant with diligence and resoluteness, such proof is unnecessary when, as here, a defendant is represented by counsel laboring under possible conflicts of interest. To require such proof would be unfair to the defendant, "for who can determine whether his representation was affected, at least, subliminally, by the conflict." *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.

We disagree with the State that *People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870, and *People v. Strohl* (1983), 118 Ill. App. 3d 1084, 456 N.E.2d 276, require that we reach an opposite finding. In *Kloiber,* the defendant was charged with murder and armed robbery. The public defender who was appointed to represent the defendant had previously represented one of the State's witnesses on an unrelated charge. After the State's witness had been sentenced, he testified at the defendant's trial regarding incriminating statements that the defendant allegedly made to him while they were both in the county jail. By contrast, in the present case, the charges against the defendant and the two potential State witnesses were related. Thus, there was a real possibility that confidential information received from Griffith and Roberts could have affected his attorneys' representation of him.

■ Finally, the State cites *People v. Strohl* (1983), 118 Ill. App. 3d 1084, 456 N.E.2d 276, for the proposition that a *per se* conflict of interest may never exist in the absence of an existing active attorney-client relationship with a State's witness at the time of the defend-

ant's trial. To the extent that *Strohl* so holds, we choose to be guided by the pronouncements of the Illinois Supreme Court in *Johnson* and *Coslet*, wherein the court indicated that a conflict of interest may arise even though an attorney no longer represents a client, since the attorney remains obligated not to disclose any confidences that he may have received from his client and not to represent conflicting interests.

For the foregoing reasons the judgment of the circuit court of Fulton County is reversed.

Reversed and remanded.

ALLOY, P.J., and BARRY, J., concur.