THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILL HENRY, Defendant-Appellant.

Fifth District   No. 77-132

Opinion filed August 9, 1978.

EBERSPACHER, P. J., specially concurring.

Michael J. Rosborough and Debra Knight Loy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Patrick J. Hitpas, State's Attorney, of Carlyle (Bruce D. Irish and Ann E. Singleton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Bill Henry was found guilty at a jury trial of burglary and criminal damage to property and was sentenced to a term of 4 to 12 years for burglary and one day in the county jail for criminal damage to property. He contends that he was denied effective assistance of counsel by virtue of his attorney's conflict of interest.

On March 24, 1976, Bill Henry, Michael Miller, Robert Miller, and Forrest Wilbur were jointly charged with burglary. In addition, Michael Miller, Robert Miller and Bill Henry were charged with criminal damage to property. Two other individuals, Judy Elsworth and Charles Burger, were also charged in connection with the same incident. In a statement made on March 23, 1976, while in the custody of the Clinton County Sheriff, Michael Miller confessed to the burglary and criminal destruction of property charges and implicated Bill Henry in both offenses. On April 26, 1976, a conflict of interest hearing was held at which Michael Dunston, an assistant public defender for the Fourth Judicial Circuit Public Defender Project, was appointed to represent Bill Henry, Forrest Wilbur and Judy Elsworth. Dennis Huber, chief public defender for the Fourth Circuit Defender Project was appointed to represent Michael Miller and Robert Miller. Huber was appointed to represent two of the co-defendants because of a conflict of interest which would have arisen had Dunston represented all defendants. This arrangement was explained by the court and approved by defendant Henry during the following exchange:

"THE COURT: All right. Now Mr. Huber would you and Mr. Dunston want to ask each one of these individuals as to the conflict and their waiving of any conflict at this time and so we can get it on the record?

MR. DUNSTON: I have spoken to each of the defendants, Your Honor, individually and on the basis of those interviews I did determine that there were conflicts with my representing everyone involved. I have spoken to Mr. Henry, to Judy Elsworth and to Forrest Wilbur specifically about representing them while other attorneys represent the other persons involved in the case. From those discussions I have determined that there appears to be no conflict at this time between Mr. Henry, Miss Elsworth and Mr. Wilbur and all have assented to my continuing to represent them. I have also spoken to Robert and Michael Miller, explained to them, explained to Michael who in turn told Robert that there was a

conflict in my representation of them and both have assented to representation by Mr. Huber. It's my understanding that Mr. Becker has in turn discussed the matter with Mr. Burger and that he has also agreed to waive any possible conflict of interests concerning the public defender's office.

THE COURT: All right. Thank you. Well, then Bill Henry and Judy Elsworth and Forrest Wilbur I now ask you if you are willing to be represented by Mr. Michael Dunston.

MR. WILBUR: Yes, sir.

MISS ELSWORTH: Yes.

MR. HENRY: Yes.

THE COURT: And are you waiving any conflict of interests that might exist between the public defender's setup? Are you willing to proceed with his representation?

MR. WILBUR: Yes, sir.

MISS ELSWORTH: (At which time the defendant nodded in the affirmative.)

MR. HENRY: (At which time the defendant nodded in the affirmative.)"

Michael Miller pleaded guilty to the burglary charge on July 19, 1976, and was sentenced to a term of imprisonment. Miller was then ordered to testify at defendant Henry's trial on January 13, 1977. He admitted committing burglary and testified that Bill Henry had participated in the offense. Miller also stated that on the morning of July 19, 1976, the State's Attorney had promised to recommend his parole if he "told the truth" at the trial. Miller's testimony was the only evidence implicating Henry in either offense and was based on his statement to the police on March 23, 1976, which he made after three months in custody and while burglary and damage to property charges were pending against him. The charges of criminal damage to property were later dropped in exchange for Miller's plea of guilty on the burglary charges.

In *People v. Halluin*, 36 Ill. App. 3d 556, 344 N.E.2d 579, the defendant contended that he was denied effective assistance of counsel from his appointed attorney's representation of a co-defendant who pleaded guilty and after being sentenced, became a witness for the State against the defendant. Defendant argued that his appointed lawyer was unable to effectively cross-examine and impeach the testifying co-defendant because impeaching material would have been acquired while the attorney and co-defendant were in an attorney-client relationship. We stated in *Halluin* that the validity of this argument did not depend on whether the testifying defendant had anything further to gain or to protect by testifying, since the confidentiality of the attorney-client communication persists after sentencing of the client. We concluded in

*Halluin* that there was conflict inherent in the situation because Halluin's lawyer could not cross-examine the co-defendant concerning statements given him by the co-defendant in the context of their attorney-client relationship. *Halluin* was cited with approval by this court in *People v. Drysdale*, 51 Ill. App. 3d 667, 366 N.E.2d 394, wherein this court said:

"Thus where the same attorney represents a defendant and a co-defendant whose interests are 'antagonistic' reversal is warranted. [Citations.] In such a situation, even where the attorney's services to the co-defendant have been terminated but where the co-defendant testifies against the defendant, there exists the potential of an inability to effectively cross-examine the co-defendant due to the continuing commitment of the attorney not to disclose any confidence given him by his former client. [Citations.]" 51 Ill. App. 3d 667, 672.

■■■ In this case the Public Defender Dunston talked to Michael Miller in sufficient depth to conclude that Miller's interests conflicted with that of Henry. In so doing, Miller had to relate to him in confidence his own part in the crime. When he talked to Miller, an attorney-client relationship existed. This attorney-client relationship would prevent him from cross-examining Miller concerning anything that transpired during the existence of that relationship. Thus there was a conflict of interest inherent in the situation and the defendant is entitled to a new trial. We distinguish this case from our opinion in *People v. McCord*, No. 77-31, filed concurrently with this opinion, where we held that where the trial court was not made aware of a conflict of interest or possible conflict either before or during the trial, the defendant had to demonstrate more than a possibility of conflict. In the case at bar the record discloses an actual conflict.

Defendant also contends that the trial court erred in admitting into evidence the written statement given by Michael Miller which not only inculpated the defendant, but was also used to bolster Miller's testimony. This was so clearly error that a discussion of this issue is unnecessary.

For the foregoing reasons the judgment of the circuit court of Clinton County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

KARNS, J., concurs.

Mr. PRESIDING JUSTICE EBERSPACHER, specially concurring:

I concur in the reversal and remandment, but not only for the principle reason stated. It should additionally be noted that Dunston and Huber were both affiliated with the Fourth Judicial Circuit Public Defender Project and that, in fact, Huber was Dunston's superior in that

organization. As such, Dunston was not independent of Huber but was fully bound to Huber's commitments to Michael Miller. (*People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer*, 61 Ill. App. 3d 748, 378 N.E.2d 169; *People v. Baxtrom*, 61 Ill. App. 3d 546, 378 N.E.2d 182.) Thus without regard to Dunston's own professional relationship to Miller, he was, in any event, restrained under the circumstances in representing defendant due to his superior's obligations to Miller.

Further, I do not consider this aspect of Dunston's *per se* conflict of interest to have been knowingly and intelligently waived by defendant. The lower court only inquired: "And are you waiving any conflict of interests that might exist between the public defender's setup?" However, the actual "setup" of the unique Public Defender Project, its significance, and the nature of the possible restraint by Dunston arising therefrom, had not been fully explained to defendant.