THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HANSON *et al.*, Defendants-Appellants (Ronald Beavers, Defendant).

Fifth District    No. 5—94—0225

Opinion filed June 30, 1995.

George F. Taseff, of Bloomington, and Scott D. Spooner, of Heyl, Royster, Voelker & Allen, of Springfield, for appellants.

William Hoffeditz, State's Attorney, of Newton (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Four defendants, Robert Hanson, Ronald Beavers, Bobby Tracy, and Frank Yager, were convicted of various felony offenses charged pursuant to the Illinois Environmental Protection Act (the Act) (415 ILCS 5/1 *et seq.* (West 1992)). Three defendants, Hanson, Tracy, and Yager, appeal. Defendant Ronald Beavers has filed no notice of appeal and is not involved in this appeal. We note that when we refer to the defendants, we mean only Hanson, Tracy, and Yager, unless an otherwise specific reference is made to Beavers, since we have discovered, in a terribly confusing set of appellate briefs and motions, that no effective notice of appeal was filed in behalf of defendant Beavers.

The issues which are dispositive of this case are: (1) whether the trial court erred by denying defendants' motion to dismiss all charges on grounds of prosecutorial misconduct; (2) whether the evidence is legally sufficient to support the convictions of defendant Hanson; and (3) whether the constitutional rights of defendants Hanson, Tracy, and Yager were violated by their attorney's concurrent representa-

tion of all four defendants in conjunction with the same attorney's representation of the corporation employing all four defendants. For reasons we will more fully explain, we reverse the convictions of Hanson, Tracy, and Yager, we remand in part, and we note that we have no jurisdiction as to defendant Beavers.

On June 3, 1993, the State filed a three-count information against the four defendants. Count I charged Hanson and Beavers with unauthorized use of hazardous waste and alleged that without lawful justification Hanson and Beavers knowingly transported approximately 16 barrels of hazardous waste to an unlicensed facility in rural Jasper County, Illinois, a Class 4 felony. (415 ILCS 5/44(d)(1)(C) (West 1992).) Count II charged all four defendants with criminal disposal of hazardous waste and alleged that without lawful justification defendants knowingly disposed of approximately eight barrels of hazardous waste by dumping them onto the ground, a Class 3 felony. (415 ILCS 5/44(c)(1) (West 1992).) Count III charged Hanson and Beavers with unauthorized use of hazardous waste and alleged that they knowingly stored approximately 16 drums of hazardous waste at an unlicensed facility in rural Jasper County, a Class 4 felony. 415 ILCS 5/44(d)(1)(A) (West 1992).

Tracy and Yager are employees of Armor Shield of Illinois, Ltd. (Armor Shield), a corporation. Robert Hanson is Armor Shield's president. Ronald Beavers is Armor Shield's general manager. Armor Shield's business endeavors include cleaning, refurbishing, and painting underground storage tanks, a by-product of which is hazardous waste.

On March 11, 1991, Hanson dispatched Tracy and Yager to a farm (Neese farm) in rural Jasper County. Beavers was out of the State on a business trip all day on March 11, 1991. It is undisputed that Hanson directed Tracy and Yager to separate solid material from liquids in several partially full 55-gallon barrels located in a shed at the Neese farm in order that Armor Shield could ship full barrels of hazardous waste to a licensed disposal facility in Indiana. Yager testified at trial that he and Tracy went to the Neese farm as directed and separated the solid material from the liquids. It is undisputed that while at the Neese farm, Tracy and Yager spilled some of the hazardous waste onto the ground south of the shed while separating the solids from the liquids. Defendants contend that Yager and Tracy accidentally spilled no more than five gallons of waste and that a small amount of diesel fuel spilled out of a skid loader. Yager testified that he and Tracy also consolidated trash from an existing trash pile just south of the shed and buried it with some nonhazardous trash that remained in the barrels.

On June 16, 1993, all four defendants, by their single attorney, Scott Spooner, filed a motion to quash the information. The substance of the motion was the allegation that the assistant Attorney Generals who prosecuted the criminal action against defendants were guilty of misconduct in violation of defendants' constitutional rights to due process. Specifically, the motion alleged that the State had concealed or destroyed a tape recording of an interview of Tracy and Yager by Attorney General investigator Jay Evans. Attached to the motion to quash are several documents, including affidavits signed by Tracy and Spooner. Tracy states in his affidavit that Evans tape-recorded the interview with Tracy and Yager. Tracy's affidavit relates nothing about waiving any conflict of his attorney. Spooner states in his affidavit, "[I]n April, 1992, and for a substantial period prior and subsequent thereto, I served as counsel for Armor Shield of Illinois, Ltd., Bob Hanson, Ron Beavers, Bobby Tracy and Frank Yager." On July 2, 1993, the court denied defendants' motion to quash as untimely.

On September 3, 1993, all four defendants filed a motion to dismiss the information, restating the allegations made previously in the motion to quash. The trial court conducted a lengthy evidentiary hearing on the motion to dismiss. At that hearing, Evans testified that he did not tape-record the March 25, 1991, interview with Tracy and Yager. Tracy and Yager both testified that Evans used a handheld tape recorder to tape the interview. At the motion hearing, defendants also presented evidence that on February 6, 1992, representatives of the Illinois Environmental Protection Agency (IEPA) and the Attorney General's office met with the attorneys for Armor Shield, Scott Spooner and Brent Gwillim, to discuss the regulatory requirements governing storage and transportation of hazardous materials. When the meeting adjourned, all agreed to the preparation of a consent order to be filed contemporaneously with a civil action against Armor Shield by the IEPA.

On March 12, 1992, the Attorney General's office impaneled a grand jury to investigate possible criminal charges against Armor Shield, Hanson, and Beavers for violations of the Act. When Tracy and Yager were subpoenaed to testify before the grand jury, Spooner entered his appearance as their attorney. The State immediately objected to Spooner representing Tracy and Yager, on the ground that his representation of Armor Shield was in conflict with his representation of Tracy and Yager. The State's motion to disqualify alleged, in part, that Tracy and Yager "seem more concerned about their jobs than they do about their criminal liability." Tracy and Yager both filed affidavits in response to the State's motion to

disqualify Spooner, stating that they were not concerned about their jobs with Armor Shield, but stating nothing about waiving their attorney's conflict of interest. The State filed its own response, contending that "no tape recordings exist or were made of interviews of Frank Yager or Bobby Tracy pursuant to investigation of this matter."

The trial judge presiding over the grand jury investigation took the State's motion to disqualify Spooner under advisement. No order was ever entered on the motion to disqualify Spooner. The State did not submit the case to the grand jury for indictment but chose instead to file the criminal information in lieu of reconvening the grand jury. After filing the information, the State did not raise the issue of Spooner's conflict of interest.

At the hearing on defendants' motion to dismiss, defendants introduced several letters back and forth between Spooner and Jim Morgan, the assistant Attorney General in charge of the civil proceedings against Armor Shield. Defendants point out that several letters from Morgan refer to "the tape" recording of the March 25, 1991, interview, without any question that such a tape actually exists. Defendants argue that the references in Morgan's letters are conclusive evidence that such a tape was made and later concealed or destroyed by the State. However, at the hearing on the motion to dismiss, Morgan testified that he referred to the tape based upon Spooner's earlier references to a tape, without first checking with Evans to determine if Evans actually made a tape of the interview. Morgan testified that he assumed that Spooner knew what he was talking about when he referred to a tape of the interview.

On November 5, 1993, the trial court denied defendants' motion to dismiss, finding that defendants "failed to prove by a preponderance of the evidence that an audio tape ever existed of the interview by Jay Evans of Bobby Tracy and Frank Yager."

On January 11, 1994, the State filed a motion for severance, requesting that the charges pending against Hanson and Beavers be severed from the charges pending against Tracy and Yager. The motion alleged that Tracy and Yager made statements which implicated them, as well as Hanson and Beavers, and which the State intended to use against Hanson and Beavers. Defendants filed a response in objection to the motion for severance, in which Hanson and Beavers waived their "right to be 'protected' by the prosecution via a separate trial." On January 14, 1994, the trial court denied the State's motion for severance. None of the four defendants filed anything or made any statements on the record to waive any conflict of interest of their attorney.

The jury trial began January 25, 1994. We have previously related some of the evidence presented at that trial. Additionally, Quinn McClure, the resident tenant of the Neese farm, testified that on March 11, 1991, he saw Tracy and Yager burying something behind the shed and later called the authorities to investigate. McClure testified that Hanson called him the next day and told him not to worry, that Tracy and Yager had only buried 10 to 15 gallons of diesel fuel and floor dry, the substance used to absorb fuel in underground storage tanks.

Larry Mulvey, Jasper County sheriff in 1991, testified that he participated in the investigation of the dumping incident at the Neese farm. As part of the investigation, he spoke with Hanson and Beavers. According to Mulvey, "They [referring to Hanson and Beavers] said they had some of their employees down there cleaning up and without their permission, that they had buried four or five barrels of these fluids ***." Mulvey testified that Hanson readily gave his permission for the IEPA to take samples from the Neese farm and that both Hanson and Beavers asked "if they could clean this up with their own people" under the supervision of the IEPA "to keep from blowing this whole thing out of proportion."

Dale Ellenberger, a field inspector for the IEPA, testified that he participated in the investigation of the Neese farm. On March 12, 1991, Ellenberger spoke with Hanson and Beavers. According to Ellenberger, "they," referring to Hanson and Beavers, told him that Tracy and Yager dug a pit and dumped four or five barrels of floor dry into the pit. Ellenberger testified that Beavers commented that this was an unfortunate incident, but Armor Shield would clean up the site. Ellenberger also testified that he took samples of the contents of the barrels in the shed and the soil behind it.

Spooner did not cross-examine Mulvey or Ellenberger as to which defendant made which portion of any of the statements ascribed to both Hanson and Beavers.

John Richardson, an investigator for the IEPA, testified that Armor Shield did not have the necessary generator number or a permit for the storage of hazardous waste for the Neese farm site until May 1993. Gary Germann, the IEPA chemist who tested the samples collected by Richardson, testified that several of the samples of the barrels and the soil contained hazardous material. Richardson estimated that approximately eight 55-gallon barrels full of hazardous waste were buried south of the shed.

Hanson testified that he did not tell Sheriff Mulvey that Tracy and Yager dumped four or five barrels, but that they dumped only four or five gallons of material out of the barrels. Hanson acknowl-

edged that he stored barrels of material collected from the cleaning of underground storage tanks at the shed at the Neese farm, but he stated that the barrels were never stored there for longer than 90 days and that he thought such a practice was acceptable based upon a statement in a Federal government publication. A defense exhibit indicates that from June 24, 1990, through March 12, 1991, Armor Shield shipped between 6 and 18 55-gallon barrels of hazardous material to a licensed disposal facility. Hanson estimated that each 55-gallon barrel, when full, weighs approximately 400 pounds.

The trial court directed a verdict in favor of Beavers on count II, criminal disposal of hazardous waste, and the jury found Beavers guilty on counts I and III, storage and transportation of hazardous waste without proper permits. The jury found Hanson guilty on all three counts and found Tracy and Yager guilty of count II, criminal disposal of hazardous waste.

Defendants Hanson, Tracy, and Yager first argue that the trial court improperly denied their motion to dismiss all charges on the basis of prosecutorial misconduct, claiming that the order is manifestly erroneous and against the manifest weight of the evidence. We disagree. The trial court has the inherent authority to dismiss charges against a defendant where there has been a clear denial of due process. (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.) Where the prosecution suppresses evidence requested by and favorable to the accused, the court should find that the accused's due process rights have been violated if the evidence is material to the accused's guilt or punishment, irrespective of the good or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) However, the first issue the trial court must resolve is whether the evidence defendants request actually exists, for if not, there can be no finding of prosecutorial misconduct. (*People v. Johnson* (1991), 222 Ill. App. 3d 1, 582 N.E.2d 1331.) A defendant claiming prosecutorial misconduct has the burden of proof. *People v. Goldsmith* (1994), 259 Ill. App. 3d 878, 630 N.E.2d 1259.

■ The trial court in this case heard lengthy testimony and admitted numerous defense exhibits which, defendants claim, support their contention that Evans tape-recorded an interview with Tracy and Yager on March 25, 1991, and that the State has either concealed or destroyed the tape. The record does not support defendants' argument. It is clear that there was at least a misunderstanding between Spooner and Morgan. Nevertheless, the trial court heard the witnesses, who testified to sharply contrasting versions of the facts. Tracy and Yager both unequivocally stated that Evans tape-recorded

the interview. Evans unequivocally stated that he did not tape-record the interview. Morgan explained his references to the tape as being based upon statements made first by Spooner, his failure to inquire of Evans or anyone else whether such a tape recording actually existed, and his belief that Spooner knew what he was talking about. Clearly, the trial judge, as the finder of fact, was in a much better position than this court to determine the credibility of the various witnesses and the weight to be given their testimony and to draw reasonable inferences from the evidence before him. (*Johnson*, 222 Ill. App. 3d at 10, 582 N.E.2d at 1337.) Based upon the record before us, the trial court's denial of the motion to dismiss was neither against the manifest weight of the evidence nor contrary to law.

■ For the same reasons, the trial court's denial of defendants' first motion *in limine*, which barred defendants from introducing extrinsic evidence regarding the existence of the tape recording, was not error. The trial court allowed defendants to examine all witnesses about whether such a recording was made, but the court disallowed them from calling additional witnesses solely for the purpose of rehashing the tape issue. The determination of the admissibility of evidence is a matter within the sound discretion of the trial court. (*People v. Turner* (1989), 179 Ill. App. 3d 510, 534 N.E.2d 179.) The trial court did not abuse its discretion in denying defendants' first motion *in limine*. Rather, the trial court's ruling prevented defendants from a redundant presentation of evidence that might have confused the jury.

We next consider defendants' argument that the evidence was legally insufficient to support Hanson's convictions on any of the charges. We note that defendants argue, in their brief as well as in oral argument, that Beavers' convictions were not supported by the evidence. We would readily agree with this argument, but for the fact that we have no jurisdiction to decide any issue on behalf of Beavers, since no one filed a notice of appeal on his behalf. We additionally note, and will further address in the next section of this opinion, that defendants do *not* argue that the evidence was insufficient to support the convictions of Tracy or Yager. Hence, we consider only the sufficiency of the evidence to support Hanson's convictions.

●3 When a court of review is presented with a challenge to the sufficiency of the evidence, the germane question is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, when all of the evidence is viewed in the light most favorable to the State. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 589 N.E.2d 508; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.)

As to Hanson, even when viewed in the light most favorable to the State, the evidence is insufficient to convict him of criminal disposal of hazardous waste as charged in count II. The only evidence against Hanson on this charge is that Hanson admitted that he directed Tracy and Yager to the Neese farm on March 11, 1991, for the purpose of having them consolidate liquids with liquids and solids with solids. Hanson also admitted that he directed the wastes generated during the cleaning of underground storage tanks to be transported to and stored at the Neese farm, which is sufficient to support convictions under counts I and III (415 ILCS 5/44(d)(1)(A), (C) (West 1992)) but is insufficient to support a conviction for the offense of criminal disposal of hazardous waste. 415 ILCS 5/44(c)(1) (West 1992).

When viewed most favorably to the State, the testimony is undisputed that Hanson did not direct Tracy or Yager to dispose of anything at the Neese farm on March 11, 1991. Thus, the jury's verdict finding Hanson guilty of criminal disposal is based upon improper speculation and conjecture and is inadequate to support a finding of guilt beyond a reasonable doubt. (*Collins*, 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Williams* (1993), 244 Ill. App. 3d 669, 614 N.E.2d 367.) Therefore, we reverse Hanson's conviction of criminal disposal as charged in count II. We find the evidence presented *in this case* and *to this jury* legally sufficient to support Hanson's convictions on counts I and III, but we reverse and remand on the ground of Spooner's conflict of interest.

We now address the issue of Spooner's conflict of interest. Regardless of the fact that neither defendants nor the State raises this issue, we are compelled to consider it *sua sponte*, in the exercise of our duty to insure that this cause has a just result, pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)) and the doctrine of plain error. See *People v. Favors* (1993), 254 Ill. App. 3d 876, 626 N.E.2d 1265; *People v. Shelton* (1993), 252 Ill. App. 3d 193, 624 N.E.2d 1205.

Spooner's representation of these four defendants in conjunction with his representation of the corporation employing all four defendants, the same corporation Spooner and his law firm represented in the earlier civil investigation of the same incident, amounts to a *per se* conflict of interest that requires us to reverse and remand the convictions of Hanson, Tracy, and Yager. Clearly, Beavers' convictions are tainted by the same conflict of interest, but, unfortunately, for lack of a notice of appeal, we cannot decide this issue on Beavers' behalf in this appeal.

In *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 366 N.E.2d 394, this court relied upon several Illinois Supreme Court cases in holding

that "a *per se* conflict of interest will be found whenever there is a showing that a defense counsel's past or present commitment to others raises the possibility of an unwillingness or inability to effectively represent a defendant and in such a situation a reversal will be warranted even without a showing of any actual prejudice resulting thereby." (*Drysdale*, 51 Ill. App. 3d at 670, 366 N.E.2d at 396.) The rationale behind the *per se* conflict rule is that "[o]nce an attorney has been retained by a client he cannot serve an interest adverse to that client regarding the same general subject matter of that employment even after the termination of his services." (*Drysdale*, 51 Ill. App. 3d at 671, 366 N.E.2d at 397.) Where the same attorney represents a defendant and a codefendant whose interests are antagonistic, reversal is warranted. *Drysdale*, 51 Ill. App. 3d at 672, 366 N.E.2d at 397.

"The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel." (*People v. Stoval* (1968), 40 Ill. 2d 109, 111, 239 N.E.2d 441, 443.) " 'Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.' " (*Drysdale*, 51 Ill. App. 3d at 670, 366 N.E.2d at 396, quoting *Porter v. United States* (5th Cir. 1962), 298 F.2d 461, 468.) The reasons that defendants who are convicted under these circumstances are entitled to a new trial are the likelihood that their attorney was unable to effectively cross-examine the witnesses and the attorney's subliminal reluctance to pursue one client's interests to the disadvantage of another client. *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569; *Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.

■ After thoroughly reviewing the record, we are compelled to find that Spooner and his law firm suffer from a *per se* conflict of interest with these four defendants and their employer, Armor Shield. Spooner and his law firm represented Armor Shield prior to the filing of criminal charges against these defendants, in the civil investigation in which the corporation was potentially liable for civil penalties including large fines. The record is clear that before these four individual defendants were charged with various felonies as a result of this incident, the corporation was a target of the criminal grand jury investigation. Section 3.26 of the Act defines a corporation as a person capable of being charged with environmental crimes, including those with which these four defendants were charged and convicted. (415 ILCS 5/3.26, 44 (West 1992).) The possibility that

Spooner succeeded in protecting the corporation from all civil and criminal liability, at the expense of the convictions of the individual defendants in this case, is too serious to allow defendants' convictions to stand.

The record is equally clear that the interests of each of the individual defendants were antagonistic to the interests of the others. For example, Hanson's main defense was that he relied upon a statement in a Federal government publication that led him to believe that he could legally transport hazardous waste to the Neese farm and store it there up to 90 days at a time. This defense was clearly antagonistic to the defense of Tracy and Yager, who admitted that they dumped something out of the barrels stored at the Neese farm and buried it behind the shed. If the substance in the barrels was hazardous, then Tracy and Yager are at least technically guilty of criminal disposal, in that the amount of waste illegally disposed is not an element of that crime. (415 ILCS 5/44(c)(1) (West 1992).) Spooner's defense of Tracy and Yager, that the substance they dumped was not hazardous, was directly contradictory to Spooner's defense of Hanson, that he thought the law allowed him to store hazardous waste at the Neese farm.

Furthermore, we note that after a complete review of the record, we cannot find any sufficient evidence to permit the conviction of Ronald Beavers, and if his trial were severed from the other three defendants, there would be a great likelihood he would never have been convicted. Yet, although according to defendants' brief and the direct statement of attorney George F. Taseff at oral argument herein defense counsel purport to represent Ronald Beavers, no notice of appeal was filed in his behalf. These are but a few examples, among many, that demonstrate the inconsistency between the defenses of Spooner's multiple clients.

The cases considering this issue have developed three main exceptions to the general rule outlined by *Drysdale*. None of these exceptions apply to the case at bar. First, a defendant is allowed to make an informed and intelligent waiver of his attorney's conflict of interest, but such waiver will not be casually inferred. (*People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 418 N.E.2d 880.) In *Jeffrey*, this court found a sufficient waiver of the codefendants' attorney because both defendants had persistently requested their attorney to continue to represent them after being admonished on the record as to the exact nature of the attorney's conflict. (*Jeffrey*, 94 Ill. App. 3d 455, 418 N.E.2d 880.) In our case, however, none of the defendants were admonished on the record as to Spooner's conflict of interest. The fact that the State filed a motion to disqualify Spooner as Tracy and

Yager's attorney, in the abandoned grand jury investigation, does not amount to the kind of admonishment found sufficient in *Jeffrey*. Likewise, the document, signed only by Spooner, wherein Hanson and Beavers waive their right to have their trials severed from the charges against Tracy and Yager cannot serve as any waiver of Spooner's conflict of interest. (See *People v. Henry* (1978), 63 Ill. App. 3d 571, 379 N.E.2d 1340.) A defendant's waiver of his attorney's conflict of interest, at a minimum, must be made personally by the individual defendant and not the conflicted attorney. We decline to rule further, as the questions of the effectiveness of specific admonishments or waivers are not before us at this time.

A second exception is where the attorney's conflict is purely personal and has no connection to his professional representation of a defendant. (*People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525.) Unquestionably, this exception does not apply to Spooner's representation of these defendants and their employer, which is purely professional.

The third exception applies to conflicts within a public defender's office. Individual attorneys who comprise the staff of a public defender's office are not subject to a *per se* rule that one attorney's conflict is imputed to all other attorneys in that office; rather, an actual conflict resulting in prejudice to the defendant must be shown before reversal is warranted. (*People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.) In the case at bar, however, Spooner is not a public defender and his conflict of interest *is* imputed to his law firm under the rules of professional conduct. 134 Ill. 2d Rules 1.7, 1.10.

We decline to address one final issue raised by the three defendants-appellants, that the court erred in refusing to instruct the jury as to defendants' affirmative defense of mistake of fact and law. In the event of a new trial or trials, defendants will all have new counsel. Thus, we do not know whether this or any other affirmative defense will be raised. As such, any statements we make herein would be purely speculative and serve no real purpose. Not wishing to hamper any of the defendants in any defense, we simply reaffirm the general rule that each defendant is entitled to an instruction on any affirmative defense for which there exists evidence sufficient for a reasonable jury to find in his favor. *Mathews v. United States* (1988), 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883.

For all of the reasons stated, we reverse Hanson's conviction on count II; we reverse Hanson's convictions on counts I and III and remand those causes; we reverse Tracy's and Yager's convictions on

count II and remand those causes; and we take no action with regard to Ronald Beavers.

Reversed in part; reversed and remanded in part.

WELCH and LEWIS, JJ., concur.