2021 IL App (1st) 191918-U

FOURTH DIVISION
December 16, 2021

No. 1-19-1918

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 16372 02 |
| ERIC VAUGHN, | ) ) | |
| Defendant-Appellant. | ) ) | |
| | ) ) ) | Honorable William G. Gamboney, Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming defendant's conviction where (1) defendant forfeited his argument that the trial court abused its discretion by failing to question the jurors prior to ruling on defendant's motion for mistrial, (2) the trial court did not abuse its discretion in denying defendant's motion for mistrial, and (3) the prosecutor did not engage in misconduct.

¶ 2    After a jury trial, defendant Eric Vaughn was found guilty of first-degree murder (720

ILCS 5/9-1(a)(1), (2) (West 2014)) and attempted first-degree murder (*id.* §§ 8-4(a), 9-1(a)(1)).

He was sentenced to 45 years' imprisonment for first-degree murder and 21 years' imprisonment for attempted first-degree murder, to be served consecutively. On appeal, defendant argues that the trial court abused its discretion when, after the court received a jury note stating "we do not feel safe making a decision" and defense counsel moved for a mistrial, the court denied the motion prior to questioning the jurors. Defendant further argues that the trial court abused its discretion by denying the motion for mistrial. Finally, defendant contends that during closing arguments, the prosecutor engaged in misconduct by implying that defendant and his family intimidated two of the State's witnesses. For the following reasons, we affirm.

¶ 3                                   BACKGROUND

¶ 4     Defendant was charged by indictment with multiple counts of first-degree murder, attempted first-degree murder, aggravated discharge of a firearm, and mob action based on the allegation that on July 12, 2014, defendant, D.B.,[1] and Michael Phillips (Phillips) shot and killed William Lewis (Lewis) while attempting to shoot Shaquon Thomas (Thomas). The State proceeded to trial on two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2014)) and one count of attempted first-degree murder (*id.* §§ 8-4(a), 9-1(a)(1)).

¶ 5     At trial, the State called Ashley Laiter (Laiter), who testified that she did not recall any of the alleged events on July 12, 2014. As evidence of prior inconsistent statements, the court admitted a transcript of an electronically recorded interview (ERI) conducted at the Chicago Police Department and a transcript of her grand jury testimony. During her ERI and grand jury testimony, Laiter asserted that on July 12, 2014, she was in a black vehicle with defendant, D.B., Phillips, and Nicolas Rivera (Rivera) and heard D.B. say that he wanted to shoot Thomas, who

---

[1] Prior to defendant's jury trial, D.B. pleaded guilty to first-degree murder and received an indeterminate term of confinement in the Illinois Department of Juvenile Justice.

was walking down the sidewalk. She observed defendant hand D.B. a firearm, then observed D.B. and Phillips exit the vehicle, and shortly thereafter heard gunshots and moaning.

¶ 6     Next, Rivera testified that he did not recall most of the alleged events of July 12, 2014. As evidence of prior inconsistent statements, the trial court admitted a transcript of an ERI which was conducted at the Chicago Police Department and a transcript of his grand jury testimony. During his ERI and grand jury testimony, Rivera similarly asserted that while defendant, Laiter, D.B., Phillips, and Rivera were in a black vehicle, someone observed Thomas walking down the sidewalk. Rivera asserted that defendant handed D.B. a firearm, D.B. and Phillips left the vehicle, and he heard gunshots.

¶ 7     D.B. testified that he was in a black vehicle with defendant, Laiter, Phillips, and Rivera. D.B. observed Thomas walking down the sidewalk and whispered to Phillips "help me get this guy." D.B. testified that defendant did not hand D.B. a firearm. D.B. asserted that he already had a firearm in his waistband. D.B. further asserted that he and Phillips left the vehicle, and D.B. shot at Thomas. To protect himself from the gunshots, Thomas threw Lewis in front of D.B. as he was shooting, and consequently, D.B. shot Lewis. D.B. was arrested approximately two weeks after the incident and was adjudicated delinquent for first-degree murder after pleading guilty to shooting Lewis.

¶ 8     Phillips testified that he was in a black vehicle with defendant, Laiter, D.B. and Rivera. Phillips observed Thomas walking down the sidewalk. Defendant then stopped the vehicle, handed D.B. a firearm, and before D.B. exited the vehicle, defendant motioned Phillips to exit the vehicle as well. Philips and D.B. approached Thomas, and when D.B. pointed the firearm at Thomas, Thomas threw Lewis in front of him and D.B. shot Lewis in the back.

¶ 9     Denis Halilovic testified that he lived near where the incident occurred. On the day of the

incident, Halilovic heard gunshots, looked through his window, and using his iPhone, took pictures of two young African Americans running through his neighbor's yard.

¶ 10    Jessica Albert testified that she was near where the incident occurred. Albert testified that she heard a loud bang and then observed a black vehicle speed down the street. Albert noticed a young African American male driving, a woman sitting in the passenger's seat, and a young African American male in the backseat.

¶ 11    Marcus Mudd testified that he was a police officer with the Chicago Police Department. Officer Mudd testified that while on patrol he observed defendant running from a gangway. He also noticed that the defendant appeared to be agitated, perspiring and slightly out of breath. Officer Mudd apprehended defendant. He then left, leaving defendant with several police officers at the scene. In court, Officer Mudd identified defendant as the person whom he observed running.

¶ 12    Victor Alcazar testified that he was a police officer with the Chicago Police Department. Officer Alcazar testified that he was on patrol with a partner when he heard over the radio a call of shots fired. Officer Alcazar observed Officer Mudd at the scene with defendant, who Officer Alcazar identified in court. Thereafter, Officer Alcazar and his partner placed defendant into custody.

¶ 13     Benjamin Soriano, an expert in the field of pathology, testified that he conducted an autopsy of Lewis and concluded that Lewis's cause of death was a gunshot wound to the back. Soriano asserted that the manner of Lewis's death was homicide.

¶ 14    Gregory Hickey, an expert in the field of firearm and toolmark identification, testified that all of the fired cartridge casings recovered from the scene had been discharged from the same firearm.

¶ 15    Brian Schoon, an expert in the field of forensic biology and DNA analysis, testified that he received buccal swabs from Rivera, Phillips, D.B., and defendant. Schoon also received swabs from the steering wheel of defendant's vehicle. After performing a DNA analysis, Schoon concluded that the DNA left on the steering wheel could have been left by defendant and could not have been left by Laiter, Rivera, Phillips, or D.B.

¶ 16    The State rested, and defendant made a motion for a directed verdict, which was denied. Defendant did not present any evidence and rested.

¶ 17    The parties proceeded to closing arguments. During the prosecutor's closing remarks, she argued that "[i]n a perfect world," Laiter and Rivera would have told "the ugly truth" about what they witnessed on July 12, 2014. The prosecutor continued, "But the law in the State of Illinois recognizes, that four years later, *** when they come into a courtroom like this, with a Judge sitting here, with the Defendant sitting there, with all these people in here *** the story changed, memories fade." As the prosecutor asserted that "the story changed, memories fade," defense counsel objected, but the trial court did not rule on the objection and the prosecutor continued her closing remarks.

¶ 18    Following closing arguments and jury instructions, the jury retired to deliberate. During deliberations, and before all of the exhibits were sent back to the jurors, they submitted a note stating "we do not feel safe making a decision" and "explain how the Jurors are to be protected *** if we are [to] find the Defendant guilty." Defense counsel argued that this note came out because, while the prosecutor during closing arguments was explaining why Laiter and Rivera's "story changed," the prosecutor had been pointing to the defense table and defendant's family, who sat directly behind the defense table. Defense counsel argued that the prosecutor had insinuated that defendant intimidated the witnesses.

¶ 19    Defendant moved for a mistrial, additionally arguing that the jurors "violated their charge, because they are more concerned with their personal safety, than doing what they were charged to do ***." The trial court denied the motion without hearing argument from the State. After the denial, the State for the record responded to defense counsel's arguments, maintaining that the prosecutor did not point to anyone or insinuate anything. The State argued that the prosecutor did not point at any individual and was gesturing to the entire courtroom. The trial court agreed with the State and asserted that the prosecutor was pointing to the gallery. The trial court then sent a note back to the jury, assuring it that the court was mindful of the jury's safety and directing the jury to continue deliberating.

¶ 20    After deliberations, the jury found defendant guilty of first-degree murder and attempted first-degree murder. Defendant moved for a new trial. In his motion, defendant again argued that the trial court erred in denying defendant's motion for mistrial and that the jurors were more concerned about their safety than reaching a fair and impartial verdict. Further, defendant argued that the prosecutor engaged in misconduct while explaining why Laiter and Rivera's "story changed" by waving her hand in the direction of defendant and his family and insinuating they had intimidated the witnesses.

¶ 21    Additionally, during argument on the motion for a new trial, defense counsel asserted that the jurors' note demonstrated that the jurors were biased, stating that the jurors were concerned only with their safety. The trial court responded that the note could have demonstrated that the jurors were convinced of the overwhelming nature of the evidence. The trial court then denied defendant's motion for a new trial, concluding that he did not read anything into the prosecutor's hand gestures during closing arguments.

¶ 22    The matter proceeded to a sentencing hearing where the trial court heard evidence in

aggravation and mitigation. The trial court then sentenced defendant to 45 years' imprisonment for first-degree murder and 21 years' imprisonment for attempted first-degree murder, to be served consecutively. Defendant filed a motion to reconsider his sentence, which was denied.

¶ 23    This appeal followed.

¶ 24                                ANALYSIS

¶ 25    On appeal, defendant argues that the trial court abused its discretion when, after the jury submitted a note stating "we do not feel safe making a decision" and "explain how the Jurors are to be protected *** if we are [to] find the Defendant guilty," the trial court failed to question the jury prior to denying defendant's motion for mistrial. In addition, defendant argues that the trial court abused its discretion by denying his motion for mistrial. Finally, defendant argues that during closing arguments the prosecutor engaged in misconduct by implying that defendant and his family intimidated Laiter and Rivera.

¶ 26                                Forfeiture

¶ 27    Before addressing the merits of this appeal, we address the State's forfeiture argument. The State asserts that defendant never asked the trial court to question the jurors and thus forfeited his argument that the court erred by denying defendant's motion for mistrial prior to questioning the jurors. We agree.

¶ 28     To preserve an issue for appellate review, a defendant must raise the issue before the trial court and in a posttrial motion. *People v. Colyar*, 2013 IL 111835, ¶ 27. If a defendant fails to do so, he forfeits review of that issue. *People v. Thompson*, 238 Ill. 2d 598, 612 (2010). Raising an issue before the trial court and in a posttrial motion affords the trial court the opportunity to address and correct errors. *People v. Jackson*, 391 Ill. App. 3d 11, 37 (2009). "To abandon this requirement would allow appellate counsel to comb the record for every semblance

of error and raise issues on appeal whether or not trial counsel considered them of any importance." *Id.*

¶ 29　Here, defendant never argued before the trial court or in a posttrial motion that the court should have questioned the jurors prior to denying the motion for mistrial. See *Colyar*, 2013 IL 111835, ¶ 27. On the contrary, defendant's position was that the jurors' note provided sufficient information to find jury bias and declare a mistrial. During argument on the motion for a mistrial, defense counsel argued that the jurors' note demonstrated that the jurors "violated their charge, because they are more concerned with their personal safety, than doing what they were charged to do ***." Similarly, during argument on defendant's motion for a new trial, defense counsel argued that the note demonstrated that the jurors were concerned only about their safety. Thus, the trial court never had the opportunity to address defendant's alleged error that the trial court should have questioned the jurors (see *Jackson*, 391 Ill. App. 3d at 37), and defendant has forfeited this issue on appeal (see *Thompson*, 238 Ill. 2d at 612). In addition, as defendant does not request plain-error review in either his opening brief or reply brief, we decline to review the issue for plain error. See *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010).

¶ 30　In reaching this conclusion, we find support in *People v. Flores*, 128 Ill. 2d 66 (1989). There, the jury submitted a note to the trial court asking about security, and the trial court brought the jurors into chambers to reassure them they were safe and ask them whether they had any other problems with security. *Id.* at 98. On appeal, the defendant argued that the trial court abused its discretion by failing to further question the jury. *Id.* Our supreme court, however, found the argument was forfeited since the defendant failed to raise the issue at trial or in a posttrial motion. *Id.* at 98-99. The supreme court thus made clear that a defendant must raise an objection regarding jury interrogations before the trial court and in a posttrial motion. See *id.* at

98-99.

¶ 31     Defendant nevertheless argues there was no forfeiture, citing *People v. Taylor*, 101 Ill. 2d 377, 387 (1984), *Smith v. Phillips*, 455 U.S. 209, 217 (1982), and *People v. Runge*, 234 Ill. 2d 68 (2009). These cases, however, fail to explain how defendant here preserved his argument that the trial court should have questioned the jurors when defendant never made this argument before the trial court or in a posttrial motion. See *Taylor*, 101 Ill. 2d at 387; *Smith*, 455 U.S. at 217; *Runge*, 234 Ill. 2d at 104-05. Thus, defendant has forfeited this issue on appeal.

¶ 32                                    Jury Bias

¶ 33     Defendant also argues that the trial court abused its discretion by denying his motion for mistrial after the jury submitted a note stating "we do not feel safe making a decision" and "explain how the Jurors are to be protected *** if we are [to] find the Defendant guilty." Defendant contends that this note established that the jurors were less concerned in deciding the case fairly and impartially than their own safety.

¶ 34     A trial court must declare a mistrial when it appears that the jury was so influenced and prejudiced that it could not have been fair and impartial. *People v. Holliday*, 2020 IL App (5th) 160547, ¶ 37. We review the trial court's determination as to whether the jurors had been so influenced and prejudiced that they could not have been fair and impartial under an abuse of discretion standard. *Runge*, 234 Ill. 2d at 104. Further, we also review the trial court's denial of a motion for mistrial for abuse of discretion. *People v. Bishop*, 218 Ill. 2d 232, 251 (2006). A trial court abuses its discretion when its decision was "arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *People v. Melecio*, 2017 IL App (1st) 141434, ¶ 41.

¶ 35     First, defendant fails to cite any authority to support his contention that the jurors' note

established that the jurors were biased, violating Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Even if we overlook this deficiency, however, defendant's argument fails.

¶ 36    In determining this issue, we find *People v. Luellen*, 2019 IL App (1st) 172019, to be instructive. In *Luellen*, a witness testified that he ignored a subpoena to appear for trial because he was scared to testify against the defendant. *Id.* ¶ 11. After the witness testified, the court received a jury note asking, "If the primary witness is so scared to testify ***, what are the safety concerns for us?" *Id.* ¶ 22. The trial court then received a second jury note which stated, "The judge said that our information is confidential. My concern is that the defendant has all our names on paper." *Id.* ¶ 27. Finally, the trial court received a third note asking the trial court to meet with the jury regarding the second note. *Id.* ¶ 28. Thereafter, defense counsel suggested that the trial court ask the jury whether it had deliberated before the close of evidence, but the court did not ask that question. *Id.* ¶ 29. The defendant moved for a mistrial and the motion was denied. *Id.* ¶ 30.

¶ 37    On appeal, the defendant argued that the trial court erred in denying the defendant's motion for a mistrial because the trial court failed to ask the jurors whether they had begun deliberating before the close of evidence. *Id.* ¶ 35. We concluded that the trial court's actions were sufficient, finding that the jury notes merely demonstrated the jurors' safety concerns: "the jurors' concerns were not with [the witness's] fear as to the ultimate issue of [the defendant's] guilt or innocence; they were with [the witness's] fear as it related to the jurors' own privacy." *Id.* ¶¶ 41-42. In addition, we found that "[a]bsent from the record is any indication that the jurors' minds had closed off to the possibility of [the defendant's] innocence or that they had reached an ultimate conclusion" and asserted that the jury notes were "silent on possible discussion of the ultimate issues." *Id.* ¶¶ 42-43 (citing *Runge*, 234 Ill. 2d at 125).

¶ 38 Like the jurors' notes in *Luellen*, the jurors' note in this case appeared to have demonstrated nothing more than the jurors' safety concerns. See *id.* ¶ 42. The note did not indicate that the jurors failed to keep an open mind as to the ultimate issues in the case, and the note was silent as to whether the jurors were more concerned with their safety than reaching a fair and impartial verdict. See *id.* ¶¶ 42-43. Moreover, as the trial court found below, a reasonable inference drawn from the note is that the jurors were convinced of the overwhelming nature of the evidence. Thus, we cannot find that it was arbitrary, fanciful, or unreasonable for the trial court to conclude that the note failed to demonstrate jury bias or to deny defendant's motion for mistrial. See *Melecio*, 2017 IL App (1st) 141434, ¶ 41. Accordingly, we find that the trial court did not abuse its discretion. See *Runge*, 234 Ill. 2d at 104; *Bishop*, 218 Ill. 2d at 251.

¶ 39                                Prosecutorial Misconduct

¶ 40 Lastly, defendant argues that the prosecutor engaged in misconduct where the prosecutor's closing remarks and alleged hand gestures towards defendant and his family implied that they had intimidated Laiter and Rivera.

¶ 41 A prosecutor's improper comments or conduct during closing arguments may warrant reversal. *People v. Love*, 377 Ill. App. 3d 306, 313 (2007); *People v. Wolf*, 178 Ill. App. 3d 1064, 1067-68 (1989). During closing arguments, however, a prosecutor is given wide latitude. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 41. Further, the prosecutor has the right to comment on the evidence and draw all legitimate inferences from the evidence, even if they are unfavorable to the defendant. *People v. Simms*, 192 Ill. 2d 348, 396 (2000). The prosecutor's comments or conduct warrants reversal only if it caused substantial prejudice to defendant. *Love*, 377 Ill. App. 3d at 313; *Wolf*, 178 Ill. App. 3d at 1068. Defendant bears the burden of proof on a prosecutorial misconduct claim. *People v. Hanson*, 273 Ill. App. 3d 332, 338 (1995).

¶ 42    This court has "noted confusion regarding the appropriate standard of review regarding alleged errors occurring during closing arguments." *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 39. Such confusion "originates from our supreme court's apparent conflicting holdings" in *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007) (applying a *de novo* standard), and *People v. Blue*, 189 Ill. 2d 99, 128 (2000) (applying an abuse of discretion standard). *Johnson*, 2015 IL App (1st) 123249, ¶ 39. We need not resolve the issue, however, because we reach the same conclusion under either standard.

¶ 43    During closing arguments, the prosecutor remarked that "[i]n a perfect world," Laiter and Rivera would have told "the ugly truth" about what they witnessed. The prosecutor further remarked, "But the law in the State of Illinois recognizes, that four years later, *** when they come into a courtroom like this, with a Judge sitting here, with the Defendant sitting there, with all these people in here *** the story changed, memories fade." Then, during argument on defendant's posttrial motion for a mistrial, defense counsel asserted that the prosecutor waved her hand in the direction of defendant and his family while making these remarks and insinuated they had intimidated Laiter and Rivera. The State denied that the prosecutor pointed at defendant and his family, and in denying the motion, the trial court agreed with the State, finding that the prosecutor was pointing towards the gallery. Additionally, in denying the defendant's motion for a new trial, the trial court concluded that he did not read anything into the prosecutor's hand gestures during closing arguments.

¶ 44    With respect to the prosecutor's hand gestures during closing arguments, defendant points to no evidence in the record, other than his defense counsel's assertions, that the prosecutor gestured towards him or his family. On the other hand, the State denied this occurred, and the trial court twice observed that the prosecutor did not point at defendant or his family.

Defendant bears the burden of proof on a prosecutorial misconduct claim, and he has failed to demonstrate that the prosecutor gestured towards him and his family during closing arguments. See *Hanson*, 273 Ill. App. 3d at 338.

¶ 45     Additionally, we find that the prosecutor's comments were proper. The evidence demonstrated that Laiter and Rivera both witnessed defendant hand D.B. a firearm, observed D.B. and Phillips leave the vehicle, and heard gunshots. The evidence further demonstrated that, four years after the incident at defendant's trial, the witnesses testified inconsistently with their ERIs and grand jury testimony. The prosecutor's comment suggesting that Laiter and Rivera changed their testimony because they were testifying before a judge, the accused, and an audience, was a legitimate inference drawn from this evidence—even if it was unfavorable to defendant. See *Simms*, 192 Ill. 2d at 396. Furthermore, the prosecutor correctly noted that the law recognizes that witnesses' memories fade over time (see, *e.g.*, *People v. Burris*, 315 Ill. App. 3d 615, 619 (2000)), and the prosecutor's comment that Laiter and Rivera's memories had faded was another legitimate inference drawn from the evidence (see *Simms*, 192 Ill. 2d at 396). Therefore, under either a *de novo* standard or abuse of discretion standard, we find that the prosecutor's comments and conduct did not constitute prejudicial error. See *Love,* 377 Ill. App. 3d at 313; *Wolf*, 178 Ill. App. 3d at 1068.

¶ 46     We have also considered the cases defendant cites for the proposition that the prosecutor's remarks were "highly prejudicial and inflammatory." See *People v. Mullen*, 141 Ill. 2d 394, 405 (1990); *People v. Rivera*, 277 Ill. App. 3d 811, 820-21 (1996); *People v. Ray*, 126 Ill. App. 3d 656, 662 (1984). These cases are not applicable as in each case the prosecutor, without support in the record, suggested that the defendant intimidated the witness. See *Mullen*, 141 Ill. 2d at 405; *Rivera*, 277 Ill. App. 3d at 820-22; *Ray*, 126 Ill. App. 3d at 662. On the other

hand, the record in this case does not indicate that the prosecutor suggested defendant or his family intimidated Laiter and Rivera. Moreover, the prosecutor's comments were based on the evidence in the record, and the prosecutor did not explicitly suggest that Laiter and Rivera's story changed because defendant or his family had intimidated them. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 89 (finding that the prosecutor's comments did not imply that the defendant threatened a witness since the comments were based on evidence and did not "explicitly suggest that [the witness] changed his story because defendant had threatened him."). Thus, defendant's argument fails.

¶ 47                                   CONCLUSION

¶ 48    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.